[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 07-15000 & 08-10595
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 24, 2008
THOMAS K. KAHN
CLERK

BIA Nos. A98-290-157 & A98-290-158

ANGELINA ERIKA CASTILLO-HERNANDEZ,
MIGUEL CASTILLO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(October 24, 2008)**

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Angelina Castillo-Hernandez and her husband, Miguel Castillo, petition for review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") dismissal of their application for asylum, withholding of removal and relief under the United Nations Convention Against Torture ("CAT"). After review, we deny the petition.

## I. BACKGROUND

### A.    Application and Hearing

Castillo-Hernandez and her husband, natives and citizens of Guatemala, entered the United States without authorization on July 9, 2004. On July 13, 2004, Border Patrol apprehended them and placed them in custody pending removal proceedings. The Department of Homeland Security ("DHS") served Castillo-Hernandez and her husband with notices to appear ("NTA"), alleging they entered the United States without being admitted or paroled. On March 3, 2005, Castillo-Hernandez admitted the charges and conceded removability.

On June 30, 2005, Castillo-Hernandez filed an application for asylum, withholding of removal and CAT relief, listing her husband as a derivative beneficiary.[1] Castillo-Hernandez's application alleged that she had been

---

[1]Although Castillo-Hernandez's husband is named as a petitioner, his asylum claim is derivative. For convenience, we refer to petitioners collectively as "Castillo-Hernandez," who is the lead petitioner. Unlike the asylum statute, the withholding of removal statute does not provide for

2

persecuted in Guatemala based on her race, membership in a particular social group and imputed political opinion. Specifically, Castillo-Hernandez pointed to her status as a Mayan woman from rural Guatemala who speaks Canjobal. According to Castillo-Hernandez's application, Mayan women historically have been victims of regional and systemic persecution by the Guatemalan authorities. She stressed that recent fighting between guerrillas and the Guatemalan army, general criminal activity unchecked by the government and government corruption also had contributed to the persecution of Mayan women.

According to her application and hearing testimony, Castillo-Hernandez lived with her mother in a small shack in her rural village of Saloma, Guatemala and never attended school. On February 2, 2004, a group of uniformed men arrived at her home and demanded to be fed. Castillo-Hernandez's application stated that the men were "looking for men to impress into their service, loot to steal, and women to assault." When the women were unable to give them food, one of the men raped Castillo-Hernandez and then told her that if she said anything, the men would kill her. Castillo-Hernandez was able to leave the house and hide in the forest the rest of the night while the men raped her mother.

---

derivative claims by spouses. See 8 U.S.C. §§ 1158, 1231; Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007). Therefore, we deny Miguel Castillo's petition as to his withholding of removal claim on that basis.

3

Castillo-Hernandez did not know who her attackers were, but described them as "older" and dressed entirely in "green clothing" and looking like "ex-guerrillas." When her mother asked the men why they were there, the men responded, "[W]hat else could we be doing here, we're here to rape you." Castillo-Hernandez did not know why the men attacked her, but stated that it might have been because her father had died, leaving her alone with her mother and that the men were taking advantage of two women alone.

Her mother had broken bones from the attack, but was unable to see a doctor or report the attack to authorities because both were too far away. Castillo-Hernandez was reluctant to report the attack because the police often knew the attackers and did not do anything about the attacks. The attack left Castillo-Hernandez's mother sickly, and she died from diabetes a year later.

After the attack, Castillo-Hernandez married her husband and moved ten hours away to her husband's home for two months before coming to the United States. While Castillo-Hernandez remained in Saloma, her mother heard reports that people were looking for them. However, once Castillo-Hernandez moved away, the men who attacked her stopped looking for her. Castillo-Hernandez's mother-in-law told her of other attacks on women in Saloma. Castillo-Hernandez's mother advised her to stay with her husband because "as long as

[she] ha[d] a man by [her] side they probably will never come back and bother us." Castillo-Hernandez stated that she wanted to leave Guatemala because she "had no food" and she was afraid that the men who attacked her would find her.

Castillo-Hernandez's husband testified that his father mortgaged his land to finance Castillo-Hernandez and her husband's move to the United States. He also described an incident in 1987 in which men speaking Spanish came to his father's farm and beat his father and took their food. In another incident in 1989 or 1990, the men returned to his father's farm asking about the land he owned and "the little paperwork, the documents that [he] had."

## B.    Articles & Reports

The record contains several 2004 newspaper articles describing a spike in murders of women in Guatemala, some involving domestic abuse and rape. One article indicated that law enforcement and government officials did not protect women who complained of abuse or assault by individuals whom the women knew. Another 2005 article described Nobel Peace Prize winner Rigoberta Menchu's allegations of racism based on her Mayan heritage, which the article called "Guatemala's first race discrimination trial."

The record also contained 2003 and 2004 reports indicating that crime and violence, and in particular violence against women, are a significant problem in

Guatemala. The 2004 Amnesty International Regional Report stated that "horrific brutality" characterized the killings of women in Guatemala. A 2003 Amnesty International report stated that the rape of indigenous females was common. A 2005 Human Rights Watch report stated that, following the end of Guatemala's 36-year civil war in 1996, women still faced work-place discrimination. According to the United States Department of State, "Background Note: Guatemala," "[c]ommon crime, aggravated by a legacy of violence and vigilante justice" was a "serious challenge" in Guatemala, and "[i]mpunity remained a major problem" because officials have a limited ability to enforce justice.

According to the 2004 U.S. State Department's Country Report on Human Rights Practices in Guatemala ("Country Report"), "[v]iolence against women" and "sexual offenses" were a problem in Guatemala, and indigenous people in Guatemala were more likely to live in poverty than non-indigenous people. According to an Amnesty International Report, "No Protection, no justice: Killings of women in Guatemala," which addressed events during 2004, violence against women in Guatemala is marked by brutality, sexual violence and an increasing number of victims. Murder victims included "students, housewives, and professionals, domestic employees, unskilled workers, members or former members of street youth gangs, and sex workers," with gender as the motivating

6

factor in the crimes. The report stressed that "rape and sexual violence were an integral part of the counter-insurgency strategy" used by the government in rural areas during the civil war. However, the report also stated that most violent attacks against women currently were concentrated in urban areas.

The record contains a report from Dr. Ruby Itzen, a psychotherapist, stating Castillo-Hernandez suffered from post-traumatic stress disorder ("PTSD") and bereavement related to her rape. Castillo-Hernandez's thoughts currently were "coherant [sic]," but her mental status could deteriorate without psychological help. A letter from Marcos Manuel Tomas, an acquaintance of Castillo-Hernandez's husband from Guatemala, stated, inter alia, that many women were murdered in Saloma, Castillo-Hernandez's village, and that "a group of people" had been looking for Castillo-Hernandez and her husband in Saloma, which was why they fled to the United States.

## C. Decision of the IJ

The IJ denied Castillo-Hernandez's application for asylum, withholding of removal and CAT relief. The IJ found the testimony of Castillo-Hernandez and her husband credible, but concluded that Castillo-Hernandez was statutorily ineligible for asylum and withholding of removal because she had failed to show a nexus between the violence she experienced in Guatemala and her Mayan

7

ethnicity or another protected ground. The IJ acknowledged that indigenous people of Guatemala often are victimized by people of Spanish descent, that widespread domestic violence against and mistreatment of women in Guatemala existed and that rape could constitute persecution. However, Castillo-Hernandez's evidence indicated that her attackers "were looking for money and food" and were "gang members or criminals," which was consistent with the Amnesty International reports and the Country Report. The IJ stressed that the fact that the attackers "were formerly involved in activities against the government" did not prove that they still were opposing the government and not pursuing purely criminal activity. The IJ concluded that the evidence was insufficient to show that Castillo-Hernandez and her husband "were being singled out for persecution or harm on account of a protected ground as opposed to their simple vulnerability as individuals living alone in remote areas." The IJ also found that Castillo-Hernandez could relocate to another area of Guatemala, where she could obtain greater protection from the government.[2]

With respect to Castillo-Hernandez's CAT claim, the IJ found that she had not established evidence of "systematic torture" against indigenous people by the

---

[2]The IJ concluded that her application was not time-barred, and the government has not challenged this conclusion on appeal. Thus, we do not address this issue further.

Guatemalan government or individuals acting with its consent, or established that her attackers were acting for the government. The IJ noted that Castillo-Hernandez's husband did not present any evidence that the men who accosted his father in 1987 were from the government.

## D. Decision of the BIA

Castillo-Hernandez appealed the IJ's decision to the BIA, arguing, inter alia, that: (1) the IJ did not adequately consider Castillo-Hernandez's psychologist's report; and improperly refused to allow a continuance when Castillo-Hernandez's psychologist was unable to appear at the hearing; (2) the IJ had not adequately considered her "gender-related claims," emphasizing that she belonged to a particular social group of illiterate, impoverished Canjobal-speaking Mayan females and was "targeted by current and ex-guerrillas, 'clandestine groups,' and regime elements," and was "raped by a uniformed individual likely a member of one of these entities ignored, tolerated, or guided by the authorities"; and (3) she and her mother were "imputed a political opinion of neutrality by both sides in post-Civil War Guatemala."

Dismissing Castillo-Hernandez's appeal, the BIA adopted and affirmed "the [IJ's] thorough and well-reasoned decision." The BIA concurred with the IJ's finding that Castillo-Hernandez did not meet her burden of establishing proof of

9

past persecution or a well-founded fear of persecution on account of a protected

basis. The BIA also found that Castillo-Hernandez did not establish that she

would "more likely than not" face torture by the government or with governmental

acquiescence. The BIA determined that the psychologist's report was of "limited"

relevancy because the IJ "correctly found that [Castillo-Hernandez's] mistreatment

was not motivated within the scope of the [INA]." The BIA denied Castillo-

Hernandez's motion for reconsideration.[3] Castillo-Hernandez petitioned this

Court for review.

## II.  DISCUSSION

### A.     Asylum & Withholding of Removal

On appeal, Castillo-Hernandez argues that the IJ and BIA erred in

concluding that she failed to demonstrate either past persecution or a well-founded

fear of future persecution.[4]

---

[3]We do not address Castillo-Hernandez's challenge to the denial of her motion for reconsideration, which she refers to only once in the statement of the case portion of her brief. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (declining to consider issue identified in brief's statement of the case, but not elaborated upon in argument on the merits). Instead, we focus on the BIA's decision dated September 28, 2007.

[4]When, as here, the BIA issues a decision that expressly adopts the IJ's decision, we review the decisions of the IJ and the BIA. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review findings of fact under the "substantial evidence test" and must affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation marks omitted). Under this highly deferential standard, we consider "only whether there is substantial evidence for the findings made by the [IJ], not whether there is substantial evidence for some other finding that

10

To establish asylum eligibility, the petitioner must establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. There must be a nexus between the persecution and the protected activity, i.e., the persecution must be because of the victim's protected characteristic. Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 890 (11th Cir. 2007). To demonstrate the required nexus, the petitioner must present specific facts that show a good reason to fear that because of a statutory factor, she will be singled out for persecution, or that she is a member of or is identified with a group that is subjected to a pattern of persecution. Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008). An asylum applicant may not show merely that she is a member of a particular social group, but must show that she was persecuted because of her membership in that social group. INS v. Elias-Zacarias, 502 U.S. 478, 483, 112 S. Ct. 812, 816 (1992).

Castillo-Hernandez devotes a significant portion of her brief to arguing that her rape by the ex-guerrilla rises to the level of persecution; that as a poor, Mayan,

---

could have been, but was not, made." Adefemi v. Ashcroft, 386 F.3d 1022, 1029 (11th Cir. 2004) (quotation marks omitted). In other words, "we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

Canjobal-speaking woman from rural Guatemala she is a member of a particular social group; and that imputed political opinion is a protected ground under the INA.[5]  However, even assuming arguendo these things are true, she cannot prevail because the IJ and the BIA concluded that she failed to show a nexus between the harm she suffered and either her status as poor, Mayan, Canjobal-speaking woman from rural Guatemala or a political opinion imputed to her.

Substantial evidence supports the finding of the IJ and the BIA that Castillo-Hernandez and her mother were victims of general criminal violence by a roving gang of ex-guerillas.  Nothing in the record compels the conclusion that Castillo-Hernandez was targeted by the ex-guerillas or raped by one of them because of her status as a poor Mayan woman or because the ex-guerillas imputed to her a political opinion of neutrality.[6]  The documentary evidence indicates that, although sexual violence against women is common in Guatemala and in Castillo-Hernandez's village, it is not directed at, or inflicted solely on, a particular group

---

[5]Castillo-Hernandez has a section of her brief outlining due process requirements.  However, she never points out any way her due process rights were violated during the immigration proceedings.  Thus, we focus on the persecution arguments she raises.

[6]The mere fact that Castillo-Hernandez's attackers were ex-guerillas does not prove persecution based on political opinion or imputed political opinion.  Rather, to show eligibility for asylum based on political opinion, the petitioner must show that the persecution has taken place or will take place because of her political opinion, not the political opinion of her persecutor.  Elias-Zacarias, 502 U.S. at 482, 112 S. Ct. at 816.

12

of women.[7]  Castillo-Hernandez testified that the attackers demanded food and told her mother they had come to rape the two women.  They made no comments indicating they were attacking her and her mother because they were Mayan and spoke Canjobal or because they thought the women had remained neutral during Guatemala's civil war almost ten years earlier.  The attackers' actions were consistent with private acts of violence and not persecution based on a protected factor.  See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006) ("[E]vidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerrillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground.").  Accordingly, substantial evidence supports the finding that Castillo-Hernandez did not suffer past persecution based on a protected ground.

Substantial evidence also supports the finding that Castillo-Hernandez does not have a well-founded fear of future persecution.  Ordinarily, a petitioner who does not establish past persecution must present "specific, detailed facts showing a

---

[7]Although some of the documentary evidence indicates that sexual violence against women was "an integral part of the counter-insurgency strategy" used by the Guatemalan government in rural areas during the civil war, that conflict ended in 1996.  Moreover, much of the violence against women now appears to be occurring in urban areas, which have seen dramatic increases in violent crime.

good reason to fear that he or she will be <u>singled out</u> for persecution on account of" a statutory factor.  <u>Al Najjar</u>, 257 F.3d at 1287 (quotation marks omitted); <u>see also</u> 8 C.F.R. §§ 208.13(b)(2)(i); 208.16(b)(2).[8]  The petitioner also must show that the persecution cannot be avoided by relocating within the subject country.  8 C.F.R. §§ 208.13(b)(2)(ii), (b)(3)(i); 208.16(b)(2), (b)(3)(i).

The record here does not compel the conclusion that Castillo-Hernandez more likely than not will be singled out for persecution on account of a protected factor if she returns to Guatemala.  As already noted, the past attack relied upon by Castillo-Hernandez appears to have been a random act of criminal violence. Furthermore, while the documentary evidence indicates that Guatemalan women and indigenous people often are subjected to discrimination and mistreatment, it does not compel the conclusion that Castillo-Hernandez personally will be singled out for further attacks because she is a Mayan, Canjobal-speaking woman.

_____

[8]A petitioner who cannot show she would be singled out for persecution on account of a protected factor alternatively can sustain her burden of proving a well-founded fear of persecution by showing a pattern or practice of persecution of a group of similarly situated persons on account of a protected factor and her inclusion in and identification with that group.  <u>See</u> 8 C.F.R. §§ 208.13(b)(2)(iii), 208.16(b)(2)(i)-(ii).  Castillo-Hernandez's counseled brief does not clearly assert a pattern or practice claim.  Nonetheless, to the extent Castillo-Hernandez is attempting to assert such a claim on appeal, we lack jurisdiction to review a pattern or practice claim because she failed to exhaust it before the BIA.  <u>See</u> <u>Fernandez-Bernal v. U.S. Att'y Gen.</u>, 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).

Additionally, Castillo-Hernandez had to carry her burden to show she could not avoid further harm by relocating. Although Castillo-Hernandez testified that she feared returning to Guatemala because her attackers might find her, she also testified that: (1) in the two months she lived at her husband's home ten hours away, no one came looking for her; and (2) her sister and mother-in-law continue to live in Guatemala apparently without harm. Thus, substantial evidence supports the finding that Castillo-Hernandez could relocate within Guatemala to avoid her attackers.

Given Castillo-Hernandez did not meet the lower burden of proof with regard to asylum, the IJ and BIA did not err in concluding that she was also ineligible for withholding of removal. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).

## B. CAT Relief

Eligibility for relief under the CAT is established where an applicant shows that "it is more likely than not that she will be tortured in her home country at the hands of her government or that her government will acquiesce in the torture." Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004); see also 8 C.F.R.

§§ 208.16(c)(2), 208.18(a)(1).[9]  Acquiescence "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity."  8 C.F.R. § 208.18(a)(7).  A failure to catch a persecutor after the fact is not acquiescence.  See Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004).

Castillo-Hernandez argues that her rape by a "uniformed individual," who was likely either a "current or ex-guerrilla," member of a "clandestine group[]" or a "regime element[]," and which was "ignored, tolerated, or guided by the authorities," constituted torture entitling her to relief under CAT.

Substantial evidence supports the findings of the IJ and BIA that Castillo-Hernandez did not establish that the Guatemalan government acquiesced in her rape by the ex-guerilla or that any future attacks by these men would be with the

---

[9]Torture for purposes of CAT relief is defined as:
[A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.
8 C.F.R. § 208.18(a)(1).  "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 208.18(a)(2).  Relief under CAT carries a higher legal standard than asylum, and is therefore very difficult to meet.  Al Najjar, 257 F.3d at 1303.

Guatemalan government's acquiescence. Castillo-Hernandez did not know the identities of her attackers, although she suspected they might be ex-guerillas because of the green clothing they were wearing. Although Castillo-Hernandez testified that these roving bands of criminals sometimes knew the police or were not punished by them, she also stated that her attackers threatened her life if she reported their crimes because they feared being sent to jail. She presented no evidence that her particular attackers were connected with or guided by the police or that the police knew about the attack before it occurred.

Documentary evidence indicates that sexual violence against women of all social classes is a problem in Guatemala and that women often do not report rape because they lack confidence in prosecutions and fear reprisals. However, the evidence also establishes that: (1) rape is a crime in Guatemala carrying penalties between 5 and 50 years; (2) Guatemalan authorities do prosecute rape cases; (3) Guatemalan law provides for police protection and restraining orders for victims of sexual violence; and (4) there is an office of the Ombudsman for Indigenous Women that provides legal services for indigenous women who are victims of rape and domestic violence. This evidence does not compel a conclusion that the

Guatemalan government would acquiesce in any future attacks on Castillo-Hernandez.[10]

**PETITION DENIED.**

---

[10]We decline to address any arguments Castillo-Hernandez attempts to raise by incorporating by reference arguments made before the IJ and the BIA. <u>See</u> <u>Four Seasons Hotels & Resorts v. Consorcio Barr S.A.</u>, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004) (declining to consider arguments made in the district court and "incorporated by reference" in a footnote).